ROGER S. MOSELEY AND HEIDI L. MOSELEY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Moseley
Docket Nos. 14628-90, 13446-91, 20373-91, 155-92, 156-92
United States Tax Court
T.C. Memo 1993-4; 1993 Tax Ct. Memo LEXIS 1; 65 T.C.M. (CCH) 1701; January 5, 1993, Filed *1 In docket Nos. 13446-91, 155-92, and 156-92, decisions will be entered for petitioners. In docket Nos. 14628-90 and 20373-91, decisions will be entered under Rule 155. Roger S. Moseley and Heidi L. Moseley, pro sese. For Respondent: Henry E. O'Neill. KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: In these consolidated cases, respondent determined deficiencies in Federal income tax and additions to tax as follows: Roger S. and Heidi L. Moseley
Additions to Tax [2]
Docket No.
Year
Deficiency
Sec. 6653(a)*
Sec. 6661
Sec. 6662
14628-90
1986
$ 13,849.00
--  $ 3,462.00
--    13446-91
1987
13,918.00
$ 696.00
3,480.00
--    20373-91
1988
11,561.00
578.05
2,890.25
--    156-92
1989
169,779.00
--  --    $ 33,956.00
Northridge Corporation--Docket *2 No. 155-92
Additions to Tax
Year End
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)(A)*
6-30-87
$ 7,905
$ 1,976
$ 395
6-30-88
7,203
1,801
360
9-01-88
900
225
45
After concessions by both sides, the issues which we must resolve are: (1) Whether payments to one or both petitioners Moseley in 1986 to 1988 ostensibly from petitioner Northridge Corp., and in 1989, ostensibly from Bauspar, Inc., Citizens Financial Corp., and the Perth Corp. were unreported income; (2) whether payments ostensibly from Bauspar, Inc., to petitioner Northridge Corp. in Northridge's fiscal years ending June 30, 1987, June 30, 1988, and September 1, 1988, represent taxable income to it; (3) whether petitioners Moseley realized a capital gain or a loss upon the dissolution of Northridge Corp. in 1988; (4) whether the effective statute of limitations bars the assessment *3 of deficiencies against Northridge Corp. for the fiscal periods ending June 30, 1987, June 30, 1988, and September 1, 1988; (5) whether petitioners Moseley are liable for additions to tax for any of the years 1986 through 1989 under sections 6653, 6661, and/or 6662; and (6) whether petitioner Northridge Corp. is liable for additions to tax under sections 6651 and/or 6653 for any of its years here in issue. FINDINGS OF FACT Petitioners Roger S. (Roger) and Heidi L. Moseley (Heidi), husband and wife, were residents of Hawaii when they filed their petitions herein. Petitioner Northridge Corp. (Northridge) was a Nevada corporation, organized in 1984. It formally dissolved on September 1, 1988, and all its assets were distributed to Roger and Heidi, who were Northridge's sole shareholders, officers, and directors. Some of the facts herein were stipulated and such stipulation of facts, together with accompanying exhibits, is incorporated herein by this reference. Roger and Heidi were married in 1977 and have two children, Noelle and Chelsea, born in 1981 and 1984, respectively. In 1982, they moved to Salt Lake City, Utah, with Noelle from Hawaii, where Roger had decided to forsake *4 the practice of law and engage in business. After at least two attempts, this venture in Utah proved unsuccessful, and the Moseleys moved back to Hawaii. At that time, Roger believed that money was to be made in real estate in Hawaii. Roger's father-in-law, Henry Kersting, was a businessman who was familiar with procedures in forming corporations, and Roger sought his assistance. As a result, petitioner Northridge Corp. was formed, and Roger and Heidi swiftly became its sole shareholders, directors, and officers. In 1984, Roger and Heidi assigned to Northridge all of their right, title, and interest in certain litigation which they had pending in Utah against a third party (hereinafter called the Utah lawsuit or the chose in action) in return for a promissory note from Northridge in the amount of $ 24,000. When Northridge was dissolved in 1988 and all its assets were distributed to Roger and Heidi, this chose in action was apparently included. When the suit was settled in 1989, the settlement amount of $ 2,500 was paid to Roger and Heidi, but they did not report these proceeds as any type of income in their 1989 income tax return. Beginning sometime in 1983, Heidi's father, *5 Henry Kersting, began to make cash gifts to her. Beginning in February 1984 and continuing until about the time Northridge was dissolved, Henry Kersting settled into a pattern of making such gifts in the amount of $ 2,000 twice a month. The gifts were not compensation to petitioners nor were they loans or repayment of loans. For his own reasons, Henry Kersting drew the checks in favor of Heidi on the accounts of several corporations which he controlled--Bauspar, Inc., Citizens Financial Corp., or the Perth Corp. At the request of Roger and Heidi, who wanted to build up funds in Northridge for its future business uses, the Kersting checks, drawn on one or another of the above companies, were made payable to Northridge, and, upon deposit therein, Heidi or Roger withdrew a large part, if not all, of the funds. Prior to the years in question here, Roger and Heidi undertook to account for these moneys as contributions to capital of Northridge. Beginning in 1986, however, they ceased this practice and began to account for the moneys as loans by them to Northridge. In fact, Roger and Heidi had no intention of making loans to Northridge or contributions to its capital. They simply *6 wanted to use Northridge as a convenient depositary for the funds given to them, which would be available for their immediate withdrawal and use for general family purposes, and usually were so used. They had no intention of giving Northridge any ownership in the funds. [3]
The gifts by Henry Kersting to the Moseleys (with Northridge as their nominee) and the withdrawals by the Moseleys from Northridge in the years in question were as follows: Year
Deposits to Northridge
Year
Withdrawals from Northridge
6-30-87
$ 48,000
1986
$ 41,700
6-30-88
48,180 [4]
1987
47,180 [4]
9-01-88
6,000
1988
30,000
*7 After Northridge was dissolved about September 1, 1988, Henry Kersting caused his controlled corporation, Bauspar, Inc., to issue checks to Heidi in the total amount of $ 16,000, which Heidi cashed. In 1989, Henry Kersting made gifts to the Moseleys, through the medium of Bauspar, Inc., Citizens Financial Corp., and/or the Perth Corp. in the total amount of $ 48,000, all of which Heidi negotiated for cash. Having conceded other adjustments, respondent's determinations now are that the above amounts deposited to Northridge were taxable income to it, and that the above amounts withdrawn from Northridge or cashed directly by the Moseleys were income to them, plus $ 1,050 for 1986 and $ 2,500 for 1989. [5]
Petitioner has conceded that $ 1,050 of respondent's 1986 determination of income of $ 44,150 is correct. *8 For 1988, respondent determined that petitioners had a capital gain of $ 22,535 from the distribution in liquidation of Northridge, which they had not reported. This figure was based upon total assets received valued as follows: Chose in action
$ 24,000.00 Cash
494.67 Furniture
1,250.00 Total assets received
$ 25,744.67 Loss: Loan from shareholders
(2,210.00)
$ 23,534.67 Less: Basis of stock
(1,000.00)
Determined capital gain
$ 22,534.67 The chose in action, having been distributed to the Moseley's in 1988, was settled for the amount of $ 2,500 in August 1989, and the Moseleys received this amount. At the time the chose in action was distributed to them in 1988, it had a fair market value of $ 2,500. Northridge never engaged in business. For the fiscal years in issue, however, Northridge claimed net operating losses of $ 30,593, $ 30,508, and $ 30,669. Respondent disallowed those claimed losses. OPINION A. The Statute of Limitations--Northridge
Before reaching the merits of any of the questions presented, so far as Northridge is concerned, we must decide whether any assessment against that petitioner is barred by the effective statute of *9 limitations, section 6501(a), as petitioners contend, or whether the statutory notice in this case was issued timely, as respondent contends. The evidence as to filing Northridge's returns is not clear. The evidence for respondent was that the Internal Revenue Service had no record of any Northridge returns until the revenue agent's audit began in 1990, when, at the agent's request, Northridge supplied returns which were accepted by the agent and filed as delinquent returns on or about May 24, 1990, well within the 3-year period for the statutory notice, which was issued on November 29, 1991. Petitioner's testimony (by Roger) was that the filing date of the fiscal 1987 return was a bit hazy, but that the returns for the two 1988 fiscal periods were filed on or about September 15, 1988, more than 3 years before the statutory notice was issued. There was no corroboration of this testimony, and no documentary or other proof of filing was offered by petitioners. The statute of limitations is an affirmative defense raised in this case by Northridge, Rule 39, and the party raising the issue has the burden of proof upon it. Rule 142(a). In the case of Northridge, we must hold that *10 petitioners have failed to carry the necessary burden of proof to show that any returns were filed or when they were filed, prior to the returns supplied to the revenue agent in 1990. We hold for respondent on this issue. B. The Question of Gifts
The overriding issue in this case--compared to which all the other issues pale in significance--is whether the payment of money to Northridge in its fiscal years ending June 30, 1987, June 30, 1988, and September 1, 1988, constituted income to it; further, whether the withdrawal of all or a portion of said funds by petitioners Moseley from Northridge in the Moseleys' calendar years 1986, 1987, and 1988 constituted taxable income to them; and finally, after Northridge was dissolved, whether the payment of money to petitioners Moseley--or, more significantly, to petitioner Heidi Moseley--constituted income to petitioners Moseley in the latter part of 1988 and throughout 1989. Section 61(a) defines gross income for income tax purposes as "all income from whatever source derived", and spells out a number of examples of such income. On the other hand, section 102(a) is specific, saying: "Gross income does not include the value of property *11 acquired by gift, bequest, devise, or inheritance." As the Supreme Court said in (quoting , a nontaxable gift proceeds from "a detached and disinterested generosity * * * out of affection, respect, admiration, charity or like impulses." See also . This Court has long taken the same position with respect to gifts. As we said in : "Gifts are defined as the voluntary transfer of property from one person to another, without any consideration, or compensation therefor." See also . Finally, as the Supreme Court said in , "Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct *12 to the totality of the facts of each case." Examining the facts of this case, we are convinced and we have found that the transfers to Northridge in its years in question were made by Henry Kersting through the various corporations which he controlled; that the transfers were intended by Henry Kersting to be gifts for the benefit of his daughter Heidi, her husband Roger, and their children Noelle and Chelsea; and that Northridge was used as a depository or nominee for the receipt and holding of these funds for the account of petitioners Moseley. We are further convinced, and we have found, that petitioners Moseley never intended to make any investment in Northridge nor any loans to it; that they intended to use and did use Northridge simply as their nominee and bailee of the funds which had been given to them by Henry Kersting and which, at the Moseleys' request, had been made to Northridge. Since the funds were made as gifts by Henry Kersting to his daughter Heidi and the members of Heidi's family, and were just held by Northridge for the Moseleys' benefit, the withdrawal of such funds from Northridge by the Moseleys could result in no income to them. The gift to the Moseleys *13 was final when made and received on their behalf by Northridge, and no further withdrawal of the funds by the Moseleys could alter that tax status. The situation here clearly illustrates the principle enunciated in , where the Supreme Court said: "In general, in matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal. In such situations, the form is a bald and mischievous fiction." In the instant case, the only function of Northridge was to serve as the nominee, bailee, and depositary of the Moseleys' funds, given to them by Heidi's father, Henry Kersting. Once this is accepted and understood, the complex legal theories spun out by respondent to support taxing these gifts first to Northridge and then to petitioners Moseley simply become irrelevant. [6]
*14 The same applies to the direct gifts, made after Northridge's dissolution, by Henry Kersting, using the vehicles of his controlled corporations, to Heidi, Roger, and their children. Except for the minor matters which we next address, this disposes of the case. C. The Capital Gains Question in 1988
Respondent determined that petitioners Moseley had a capital gain of $ 22,534.67 in 1988 based upon the computation described in our Findings of Fact, the principal item of which was respondent's determination that when the Utah lawsuit was distributed by Northridge in liquidation in 1988 to the Moseleys, it had a value of $ 24,000. Petitioners contest this determination of capital gain on various grounds and claim that, in fact, the distribution and liquidation from Northridge to them resulted in a loss. To begin with, we reject petitioners' contention of a large cost basis in their Northridge stock which would give rise to any such capital loss. As we have found, and as petitioner Roger testified on the stand, the Moseleys had no intentions of making loans or capital investments in Northridge; they used this paper corporation only as their bailee and depositary. It follows *15 from this that the deposit of what was in effect the Moseleys' money in the Northridge bank accounts, neither as a loan nor as a contribution to capital, could not give rise to any increase in the cost basis of their stock under sections 1011 or 1012, so as to affect the computation of their gain or loss under section 1001 upon receipt of Northridge property in dissolution in 1988. We do not think they acquired any more cost basis in their Northridge stock than the original $ 1,000 which they paid for it at the time Northridge was organized, and which respondent has allowed in the computation mentioned in our Findings of Fact. The items of cash and furniture mentioned in that computation were not argued by either party, and we do not disturb them. As to the valuation of the chose in action, which forms the mainpiece of that distribution, however, we think that respondent's valuation of $ 24,000 was erroneous. The evidence clearly shows that the Utah lawsuit, which apparently had been pending for several years, showed increasing signs of being a weak case from the Moseleys' standpoint, and, after it was distributed to them in the liquidation of Northridge, it was settled between *16 the parties less than a year later for the sum of $ 2,500. We think that this is the best evidence in this record for the value of that chose in action when it was distributed to the Moseleys. The difference between that $ 24,000 valuation by respondent and the true value of the chose in action, which we find to be $ 2,500 in 1988, is $ 21,500 ($ 24,000 - $ 2,500 = $ 21,500). Reducing respondent's final determination of capital gain of $ 22,534.67 by this overvaluation of $ 21,500 which we have mentioned above, it results that the Moseleys had a capital gain of $ 1,034.67 upon the distribution in liquidation to them by Northridge in 1988. Since the Moseleys received the chose in action in 1988 at a value of $ 2,500, and this is to be reflected in the capital gain which they realized in that year, it necessarily follows that when the Utah lawsuit finally paid off in the same amount of $ 2,500 in 1989, the Moseleys received no additional income from this item in that year. It was simply a wash, and respondent's determination of additional income in this amount against the Moseleys for 1989 is disapproved. D. The Additions to Tax
1. Additions to Tax Against Petitioners *17 Moseley
Respondent determined additions to tax against the Moseleys on account of negligence under section 6653(a) for each of the years 1987 and 1988. As is true of all the other additions to tax determined herein by respondent, petitioners have the burden of proof with respect to the addition to tax for negligence herein. . The results of our findings and conclusions herein, however, eliminate the determined deficiencies against the Moseleys for all except trivial amounts in 1986 and 1988. We are satisfied that petitioners have carried their necessary burden of proof to show that there was no negligence in this case, and respondent's determinations under section 6653 are disapproved. With respect to section 6661, for the years 1986-88, the statute imposes an addition to tax equal to 25 percent of the amount of any underpayment which is attributable to an understatement of tax, if such understatement of tax for any taxable year is substantial. "Substantial" is defined in section 6661(b) as being in excess of either (a) 10 percent of the tax required to be shown on the return for the taxable year, or *18 (b) $ 5,000. It is apparent that neither one of those tests will be met in the instant case, and we accordingly disapprove respondent's determination of additions herein under section 6661. Since we have found no negligence or any substantial understatement of income tax, within the meaning of section 6662(b), the penalty provided for in section 6662(a) is likewise not appropriate in this case, and we disapprove it. 2. The Additions Against Northridge
Respondent also determined additions to tax herein against Northridge under sections 6651(a)(1) and 6653(a). The first of these sections imposes a penalty for the failure to file or for the untimely filing of a tax return, measured by a percentage of the amount of tax due on such return, unless it is shown that the failure to file was due to reasonable cause and not to willful neglect. The second of such sections imposes a tax for negligence or willful failure to heed proper laws and regulations, also in a percentage amount of the underpayment of tax on the return which was filed. In both cases, however, as can be seen, there can be no such addition if there is no tax due. As the result of our conclusions herein, all the *19 determined income against Northridge for the years here in issue has been eliminated. Since there is no income, there is no tax, and there is no addition under either sections 6651(a)(1) or 6653(a). In docket Nos. 13446-91, 155-92, and 156-92, decisions will be entered for petitioners. In docket Nos. 14628-90 and 20373-91, decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Roger S. Moseley and Heidi L. Moseley, docket Nos. 13446-91 and 20373-91; Northridge Corporation, a Nevada corporation, dissolved, docket No. 155-92; and Roger S. Moseley and Heidi L. Moseley, docket No. 156-92.↩
2. All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
*. Where an addition to tax under section 6653(a)(1)(A) applies, an addition under section 6653(a)(1)(B) also applies in an amount to be determined.↩
3. Henry Kersting and Heidi's mother, Ute, both testified as to their intent to make gifts to the Moseley family, and Henry Kersting made an allocation of the gifts between Roger, Heidi, Noelle, and Chelsea, but it is not clear that such allocation was made known to the Moseleys at the time.↩
4. The $ 180 figure in each of these amounts represents a reimbursement of expense by Henry Kersting to Roger Moseley.↩
5. Respondent has conceded that the adjustment of $ 5,400 in income against petitioners was part of the total of $ 41,700, which respondent has determined is income of petitioners for 1986. Respondent also has conceded that the determination for 1989 was overstated as to $ 69,577; respondent concedes that there is no unreported income for 1989 except for the $ 48,000 in checks which the Moseleys received, and the $ 2,500 of settlement money which petitioners received in settlement of the chose in action mentioned above. Finally, respondent has conceded that the determination of additional income against petitioners in 1989 of $ 514,000 on account of "forgiveness of debt" is erroneous.↩
6. Since we have disallowed entirely the additional income which respondent has determined against Northridge, we need not discuss Northridge's claimed net operating losses, which respondent also disallowed. We note only that all the evidence we have in this case, primarily Roger's testimony, was to the effect that Northridge never conducted any business in its years before us so as to give rise to a net operating loss deduction. See sec. 172.↩